Good morning, your honors, and may it please the court. Luke Mulligan for the appellant Julian Loera. I'd like to reserve two minutes for rebuttal at this time, and I'll try to keep my eye on the clock to do that. To convict my client at trial, the government was required to prove beyond a reasonable doubt that he was not affiliated with the Fort Mojave Indian Tribe. Stipulated evidence established that my client received health services from the Fort Mojave Indian Tribe 45 times in the six years preceding his arrest in this matter. He received those benefits by virtue of his status as a descendant of an enrolled member of the tribe. The tribe provides these services to descendants of enrolled members. In United States v. LaBeouf, this court said that because the defendant had frequently received health services on the basis of his status as a descendant of an enrolled tribal member, he enjoyed the benefits of his tribal affiliation, of affiliation with the tribe. Again, Julian? Julian Loera Maybe you could help me with something that's confusing about our test. So our newest formulation of the test is in Zapata, and we adopt more or less the Bruce test, and we say, here are the four important things in declining order of importance. And now we're sitting here on Rule 29, taking the evidence in the light most favorable to the government and all that, and I take it it's undisputed that the top two most important items that we listed in Zapata, there wasn't evidence that your client qualified for. Is that right? That is correct. So how do we analyze it? I mean, we don't say, if you're very strong on prong three, then the government's proven it beyond a reasonable doubt. It's very confusing to figure out how to apply this test of a declining order of importance in a Rule 29 context, so maybe you can see if it can help me understand whether there's any examples or any other precedents about how we do that. I agree, Your Honor, that it is confusing. I think it's instructive to look back to the first iterations of the test from Rodgers from the Supreme Court and then Broncho in this court, and the test started out as a two-part test, some blood quantum and tribal or government recognition. So there's no dispute here that there's blood quantum, right? It was three-sixteenths. The party stipulated that there is blood quantum. The party stipulated that he is not enrolled, nor is he eligible to be enrolled. He only has three-sixteenths. The tribe requires one-quarter. So really we're looking at tribal and government or tribal recognition. Now Zapata still uses that language. Prior to announcing the new iteration of the test, the descending, the four factors in importance, enrollment, benefits received by virtue of enrollment or by virtue of eligibility for enrollment, tribal benefits received by virtue of tribal affiliation and social recognition, the court prefaces that with, this is what we look to determine whether or not there is tribal or government recognition. So just, I mean, I don't want to interrupt the thread of your answer to Judge Akuta, but are these factual findings? Are you disputing the factual findings? To a large extent, no. There isn't much, most of the facts were frankly submitted by stipulation. So the facts are largely uncontested. There's some around the margins that are, but I don't think they're particularly important for purposes of our discussion here today. So if we think you made a strong showing, say, on prong three, the question would be, well, but could a reasonable juror determine that your client was not an Indian under this test because there was, it stipulated that the first two, the most important, the most important was the first one and then the next one, that there was no evidence of that. Well, I think that's exactly right. But the tests also tell us that enrollment is not determinative, nor is it required. Over and over again, the tests say that. So we know that enrollment is not the end all and be all. We know that a person can be found to be an Indian without enrollment. Is a reasonable juror required to find that without enrollment? I mean, that's really where we're sitting now. Right. So what Zepeda, the second way that Zepeda states the test is, you need to have blood quantum and only two things is how it's phrased, blood quantum and enrollment or affiliation. Note the disjunctive. Not enrollment and affiliation, enrollment or affiliation. So with regard to the four factor test, those factors are to determine recognition. I would submit that the first two factors are irrelevant to determine affiliation. If the person is affiliated, we're probably not, or if the person is enrolled, we're probably not going to go on and look to whether they're affiliated with the tribe or not. The common method of proving Indian status is blood quantum and enrollment. Zepeda says blood quantum, enrollment, or affiliation. Now, so the person's not enrolled. The second prong is also, or are eligible to become members. So it doesn't have to be a member as long as they're eligible, which there's no dispute, I take it, that your client was not eligible. My client's not eligible to be a member at this time. So if you just look at the affiliation prong or factor, he doesn't have a lot to brag about with respect to that because it's a family connection. He did get the medical help you mentioned before, but the tribe itself had explicitly disavowed criminal jurisdiction over him and rejected his application for membership. So if he was affiliated, he wasn't in very good standing. Well, the affiliation, again, comes from the tribe's policy to provide free services to descendants of enrolled members. And again, I'll point to LaBeouf, which indicates that this... Free services is one form of affiliation. Correct. Right. And remember, this is an 1152 case, 18 U.S.C. 1152 case, where the government is required to prove beyond a reasonable doubt that he's not an Indian. But they did, at least the jury so found. So now we're trying to figure out whether that was unreasonable. Well, the judge determined that. I would submit that the evidence wasn't sufficient in that regard. And again, I would point to LaBeouf. Look at the similarities in LaBeouf, where LaBeouf was an 1153 case where the government had to prove beyond a reasonable doubt that the defendant was an Indian. The LaBeouf case is strikingly similar to this one. He had received health benefits. He had residence on the reservation. He had social contacts with the reservation, to some extent. In a lot of ways, Mr. Loera's contacts are more significant than they were in LaBeouf. And can essentially the same quantum of evidence be both proof beyond a reasonable doubt of non-Indian status? Yeah, I don't see why these are not factual issues that you're asking us to review, giving credit to the opposing party, the evidence that was presented. Well, again, most of these facts are not disputed, Your Honor. We submitted the stipulation. The court found. You're arguing facts to us. And that's what's throwing me off a little. No, I believe what I'm arguing, and I'm down to a minute 32. So I'd like to reserve some time. But to answer your question, I'm arguing application, Your Honor, of the test. And again, enrollment. So a person is either enrolled or affiliated. We know that we can establish Indian status based on that. So he's not enrolled. We're going to look to see whether he's affiliated. And the first and most important factor we're going to look to is whether or not he's enrolled. That simply doesn't make sense in that context. Those four descending factors are factors that we look at to test for recognition. Then recognition is broken down further by the words of Zepeda into enrollment or affiliation. I guess LaBeouf, he was arrested, prosecuted, and convicted under the jurisdiction of the tribal courts, and here that was not the case. Is that right? No, Your Honor, that's not the case. There were juvenile convictions, but those aren't criminal convictions. Well, the court found that they weren't juvenile convictions, but I think that puts us in a place where we have a tribal court that can incarcerate a non-Indian juvenile but cannot incarcerate a non-Indian adult. And that just simply doesn't seem to be consistent with the Supreme Court's precedent in Oliphant. So I would submit, regardless of what they call a tribal court prosecution, by putting somebody on probation, incarcerating them, that was a tribal exercise of jurisdiction over my client as an Indian. The government's witness testified that that was the case, Your Honor. We've taken you to the end of your time. Yes. We'll hear from the government, but we'll give you a chance to respond. Thank you. Good morning, Your Honors. My name is Paul Stearns. I'm an assistant U.S. attorney from Flagstaff, Arizona, and I'm here on behalf of the United States. This case and a case before it were brought to the Flagstaff U.S. Attorney's Office because the tribal court had found that the defendant was not subject to criminal jurisdiction in the Fort Mojave Tribal Court. On four separate occasions in a span of approximately three months, there were criminal violations that the defendant committed on the Fort Mojave Indian Reservation. Every one of those was not handled within the tribal court. This court has said in Zepedo, one of the reasons that we have a determination of Indian status or the time period we look at is at the time of the offense. And this is a notice function. So on November 4, 2012, he was charged criminally by the tribe. November 5, 2012, the tribal court dismissed it without prejudice, with leave to allow the tribal officials to refile it as a civil matter. And it's undisputed that tribes do have civil jurisdiction over non-Native Americans. And they did that. The citations that he was issued are in the government's supplemental excerpts of a record. So in November of 2012, he knew that the tribal court did not believe he was Indian for purposes of jurisdiction. The first case that was brought to the U.S. Attorney's Office was charged. We specifically alleged he was non-Native. Now that also, and let me back up for a second, the first case that the tribal court dismissed involved an assault on his girlfriend. And her initials are R.R. The second case also involved an assault on the girlfriend whose initials are R.R. And that case was brought to my office and was also handled by Mr. Mulligan and myself. That case was resolved without reaching this issue. We essentially did a plea under 18 U.S.C. 111 for assaulting a federal officer. So we didn't reach the jurisdictional issue here. The third case that was handled by the tribal police and was referred to our office again is the case that we're here on today. And that happened in February of 2013. And then there was a fourth case that also happened in February of 2013 where the defendant was arrested by the tribal police department for resisting arrest. Had he been a tribal member, that case would have had to have been heard in the tribal court. Instead, that was referred to the Bullhead City Justice Court and he pled guilty. He did not contest jurisdiction and he did five days in jail. And that's also in the government's supplemental excerpts of records. So we have four separate cases that the tribe had criminal proceedings and did not proceed against him criminally because they believed he was not Native. And that's one of the big differences between this and the LaBeouf case is that the defendant knew this. When he committed that, essentially that third or perhaps the fourth, because the third and fourth things were very close together in time frame, he knew that the tribe did not want to exercise jurisdiction over him criminally. And yet he did it anyhow. And that's what this... You know, I understand where you're going with the argument and I'm sympathetic with the argument. But an awful lot of jurisdictional questions, the parties are powerless really to determine whether there's jurisdiction or not. And I'm not sure that what he knew or thought about jurisdiction can be determinative of jurisdiction. Well, Your Honor, I was just going by what this court said in Zapata. But I think in this case, it's a little bit different. One, there was a tribal order and he did get the civil citations. But the first case brought to the U.S. Attorney's Office, which isn't this case, he was represented by Mr. Mulligan and that's in the record. And it was alleged that he was non-Native. So certainly, and that was also in November of 2012. So by the time we get to February of 2013, he certainly knows. Now, does he know we're going to end up at the Ninth Circuit? I don't think he does. He may not appreciate all of that. But he certainly had knowledge that the court... And it's also important, I think that the Zapata says it's also important for the government officials to be able to have some certainty as well. And the Fort Mojave Tribal Police, of course, were referring these matters to the U.S. Attorney's Office. Or in one instance, they did it to the Bullhead City Justice Court. I don't think I did a very good job in writing Zapata if we're still fighting about these things. Because, yes, uncertainty is a good idea and it doesn't look as though we're very certain. Your Honor, I recognize that you wrote that opinion, Your Honor. And, but I think, you know, if we look back at the criteria here... I'm likely that we're going to criticize that opinion. I think it's well written, of course. And your concurrence is well written as well, Judge Ikuda. So, and I actually, one of the points that you made in your concurrence was the fact that we should recognize the sovereignty of the tribe. And here we should. First of all, this is different than LaBeouf in the sense that the defendant has applied for membership three separate times. And we have no such evidence in LaBeouf or any other case that I'm aware of. But it's just a flat rule. He doesn't have the blood quantum, correct? That's right. So, I mean, it's not that they're rebuffing him because they don't like him. They're rebuffing him because under their rules, he can't be a member. Right. But looking at Judge Ikuda's concurrence, as well as the Supreme Court precedent, the tribes have essentially deference on who they're going to let into the tribe and who they're not. And so it's an issue of tribal sovereignty. And here I would suggest that it's also, with respect to the court proceedings, an issue of tribal sovereignty to some degree. I mean, they basically said, we don't have jurisdiction over this case. And quite frankly, had the US Attorney's Office not prosecuted him, there would have been no entity that could have prosecuted in a case like this were a victim case. Because that's not enough, though, if they say, we don't have jurisdiction over him. Because once it gets referred and is tried in your district, in your district court, there's a burden on the government to prove what they alleged previously. That is to say, he's not an Indian by virtue of the factors, right? That is correct, Your Honor. He has the burden of production. And I think the magistrate court correctly recognized that. And then we have the ultimate burden of persuasion, which the magistrate court said we met beyond a reasonable doubt. And if I could just touch briefly on the burden issue, I think if you simply look at the factors and the analysis by the magistrate court, that's one of his first points. There is no burden shifting issue here. The magistrate court essentially combined the arguments of the burden of production and the burden of persuasion. And that's evident on page 14 of his order, where he actually goes into the first prong of the Bruce test. The first prong isn't at issue here. It's whether he had some Indian blood. But if you look at page 14 of the order, he basically says the defendant has met his burden. But then he goes on to talk about the first prong. So when we look at the burden of production, burden of persuasion issues in the brief, I'm sorry, in the magistrate court's order, he combined the analysis. And the reality is, I mean, the defendant criticizes the magistrate court because he says that the defendant failed to establish the second and fourth criteria. Well, it's now admitted by the defendant on, I think it was page 20 of his brief, that he can't meet the first two criteria. And again, if you look at the analysis that the magistrate court did, it was simply discussing both the burden of persuasion and burden of proof at the same time. And it ultimately concluded that the government had met its burden beyond a reasonable doubt. And I think that the... Is there ever a case where there wouldn't be, as here, there wouldn't be evidence on the first two prongs, but there was evidence on the third prong where we could say it was unreasonable not to say that he met the second prong as an Indian or affiliated with the tribe. Is there ever such a case? Or are you saying the third and fourth prong we can just ignore? No, I don't think you can ignore them. But I mean, that's a good question, and I don't think we have an answer for that. In the Cruz case, this court had said that certainly the fourth criteria can't overcome the first three. But the magistrate court did admit that there was some evidence on the third and fourth. And I concede that as well. I mean, what I think the primary evidence that the defendant points to is essentially the medical evidence that he had treatment at the Indian Health Services and the Fort Mojave Medical Clinic. And the undisputed evidence in this case is that every single benefit that he got was based upon his status of his mother. It's his descendant status, if you will, not based on his own political affiliation. So I think one of the ways to look at this case, really there's three questions you can ask. Was he treated like a de facto member of the Fort Mojave Indian tribe? I think that's pretty clear, he wasn't. This tribe made it clear they didn't want anything to do with him. Four criminal cases in three months, not one of them did the tribal court handle. The civil cases, those happened 15, 20 years ago. It might have been a closer call when he was 13 or 14 when those things happened. But number one, the magistrate court correctly recognized that those are civil in nature. In fact, the defendant admits that on page 41 of his brief. So it might have been a closer call a long time ago, but at the time this happened, he was not a de facto member. The second thing is that this court can look at, and this court in means has talked about an affiliation. It's got to be a political affiliation. And I would submit that that means more than just going and getting health care. This man was a convicted felon. He was relatively recently released from prison. He spent 10 years, almost 10 years in prison for a drive-by shooting. That didn't occur on the reservation. It's very hard for somebody to get medical insurance at that. So the fact that he takes advantage of a free benefit really means nothing. In all of the mental health treatments the record established, he went there as a condition of his parole. So I think if you look at that in those three ways, what did he know at the time? Was there a political affiliation? Was he a de facto member? The answer is he was not treated as a de facto member, and it's really an easy case with this standard of review. It may have been more difficult for the magistrate court, but with the deference owed to the magistrate court, it's an easy case on appeal, Your Honor. Thank you. Thank you. Well, you used your time. Let's put a minute on the clock for you. Your Honor, again I would remind the court that this is an 1152 prosecution, and the government had to prove that my client was not an Indian beyond a reasonable doubt. There's lots of reasons to doubt. The stipulated evidence shows that he has a clear affiliation with the tribe by virtue of their policy of providing benefits to him as a descendant of an enrolled member. LaBeouf clearly states that this is evidence of affiliation. I would also point to the Bruce case itself in discussing the Keyes case and reading directly from the case. The magistrate found that the tribal court had exercised jurisdiction over Keyes' daughter. It was an 1152 case where the Indian status of the victim was at issue. That was the daughter, and that she had been provided medical services by an Indian hospital. The magistrate, it had exercised jurisdiction and she had been provided services at an Indian hospital. The magistrate concluded beyond a reasonable doubt that under such circumstances she was a de facto member of the tribe. The court went on to state, without considering whether she is eligible for enrollment, we conclude that her Indian status was amply demonstrated. Again, Mr. Loera has significantly more affiliation with the Fort Mojave Indian tribe. Okay, this is a tricky case, of course. And beyond a reasonable doubt is odd. Usually beyond a reasonable doubt really refers to factual determinations that may be in dispute. Here, the factual determinations really aren't in dispute, so it's what are the consequences of the agreed upon facts. So beyond a reasonable doubt doesn't quite fit. It's just here are the facts, what does that mean? Yeah, I got it. Okay, thank you. Thank you, Your Honor.
judges: W. Fletcher, Ikuta, Barker